467 A.2d 771

**Wayne WHITE**

v.

**STATE of Maryland.**

**No. 1953, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Nov. 7, 1983.

Certiorari Denied April 2, 1984.

Mark Colvin, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on the brief, for appellant.

Stephanie J. Lane, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Michael Flannery, Asst. State's Atty. for Baltimore City on the brief, for appellee.

Submitted before LOWE, WILNER and ADKINS, JJ.

LOWE, Judge.

Claiming that appellant had criminally interfered with a meretricious contract which his codefendant (Denise Davis) had breached, Marshall McNabb testified that following Denise's failure to perform, appellant had extracted at gunpoint twice the agreed consideration. Striking their bargain upon an initial meeting on Baltimore Street and Guilford Avenue (colloquially known in Charm City as "the" block), Ms Davis led Mr. McNabb to a sixth floor apartment of an Asquith Street highrise apartment complex. Without hesitation she prepared to perform as previously agreed—"some fun" in exchange for fifty dollars—but before contractual consummation, or even partial performance, fate in the form of an elderly man interrupted the assignation and evicted the clandestine couple. Bibulous if not crapulous and presumably considering contracts as *bonae fidei et non ex turpi causa,* Mr. McNabb, still concerned with consummation, descended the stairs with Denise, discussing their "getting together when [they] got to the bottom". But upon departing from the complex, the contractors were again interrupted. Fate, this time in the form of appellant Wayne White, interfered and with the aid of a pellet pistol relieved McNabb of twice the consideration he had promised Denise. Until their arrest, Mr. McNabb did not again see the contractee nor the appellant.

Whether the jury in the Circuit Court for Baltimore City found that Denise had substantially performed, or that Mr. McNabb's consideration had failed, they exonerated Ms Davis. But for whatever reason the jury exculpated her, it found appellant, whose participation presumably was seen as a unilateral novation, guilty of armed robbery.

In the face of positive identification, appellant with and through his codefendant appeared to have raised a peripheral defense of police brutality insinuating that so badly was appellant beaten upon arrest that the police did not even dare photograph him when he was booked. This is shown

most clearly by cross-examination of the police officer on rebuttal by counsel for appellant's codefendant Davis. He asked the arresting officer:

"Q   Isn't it true, Officer, that the reason Wayne White's photograph wasn't taken was because his face was bruised and beaten by you or one of your other officers who made the alleged arrest on the night of the 15th of March?

A   No, sir, it's not."

This peripherally relevant theme was followed up by appellant's counsel who asked:

"Officer, isn't it customary that pictures of both Defendants would have been taken?"

The groundwork for the ultimate purpose indicated by the smoke screen billowing forth at this juncture was first aired by counsel for Ms Davis when the officer was cross-examined after he initially testified in the State's case.

"Q   Isn't it true when a person is brought into the police station, you know, and I guess they are, what, booked, what they call booked and write out a statement of charges and then, the Sergeant writes down certain information, right?

A   I'm not qualified to say exactly what the booking procedure is because I'm not a booking officer.

Q   Weren't you ever there when a booking was taking place?

A   We don't go into the cell blocks.   That's strictly for the booking officers.

Q   Isn't it true when a person is first arrested and brought into the station house, that he's photographed and fingerprinted?

A   He's always fingerprinted for the purposes of identification.   He has been arrested in a period of time span, let's say, I don't know exactly what the time is, if he had been arrested a month prior to that, they find that out, they will not take another photo.

Q   Although he was arrested then and there?

A   Yes.

Q   Can you check, officer, to find out whether his photograph was taken that night?

A   Yes, I can.

Q   And will you do that, sir?

A   Yes, I will.

Q   And will you respond back here after you find out and bring such a photograph, if there is one?

A   Yes, I can.

Q   Okay.  That's a photo of Mr. White and Ms. Davis.

A   If they are on file, yes."

There was no protest from or on behalf of appellant.

When the State subsequently recalled the officer after the defendants' cases in order to respond to defendant Davis' request for the photographs, that of Ms. Davis was introduced and it was brought out that appellant had not been photographed on the night of his arrest.  The obvious implication by appellant, suggested through the codefendant was that the police had so badly beaten appellant that they dared not photograph him.  Appellant's counsel himself elicited the testimony when cross-examining Ms. Davis.

"Q   Did you see them do anything to Mr. White?

A   Yes, I did.

Q   What did they do to him?

A   Kicked him down on the ground, kicked him in the stomach, kicked their knees in his back.  They was hurting him.

Q   Did you see any marks on him at all?

A   Yes, bruises on his face and arm.

Q   Was he bleeding anywhere?

A   Yes, his face was bleeding and his ear.

MR. LUNTZ:  No further questions."

It logically followed that when the State recalled the officer who had been directed by Davis' attorney to produce any photographs taken of the defendants—including White—the State was compelled to explain why no photo-

graph had been taken of him upon his arrest for this crime. The reason had already been suggested by the officer when initially cross-examined. Using that procedural explanation the State rebutted the brutality charges and sought to explain the missing photograph. The court summarized the rebuttal purpose of his testimony.

"At this time I have asked him to produce photographs taken the day of the arrest. He has testified that there was a photograph taken of Denise Davis. There was no photograph taken of Mr. White, is that correct?"

The State then proceeded to explain:

"Q   And did the fact that there's no photograph taken conform to the booking requirements?

A   Yes, sir.

Q   Did you at any time beat Wayne White?

A   Excuse me?

Q   Did you at any time beat Wayne White?

MR. SACKS [Counsel for Davis]:  I object to the form of the question.

THE COURT:  When?

MR. FLANNERY [State's attorney]:  On the date of the arrest?

A   Did I beat him?

Q   (BY MR. FLANNERY) Yes.

A   No, sir.

Q   Was he hurt in any way when he booked him?

A   Not that I recall.  He was not taken to a hospital. The procedure at the desk if he complains of any type of injury, the Desk Sergeant will not accept him, he will have to be taken to a hospital.  He was not taken to a hospital."

Appellant's attorney, either having forgotten the initial testimony or unwilling to let sleeping dogs lie asked:

"Q   Officer, isn't it customary that pictures of both Defendants would have been taken?

A   Procedure.

MR. SACKS:  I would object to the procedure.

THE COURT: Overruled. The question has been asked.

A   When I went over to the B of I to obtain photos, I checked on procedure. Procedure is if the person who has been arrested has been arrested within a six months period prior to that, they generally do not take the photo. The photos are just in the six months period. There were photos, recent photos of—

MR. SACKS: I would object, Your Honor.

THE COURT: I'll overrule the objection; asked by his counsel. You may continue."

But as the answer continued, appellant's attorney (Mr. Luntz) realized that he may have asked one question too many.

Appellant complains here of what followed there. On redirect examination, in order to show that the missing photograph in appellant's case was in strict accordance with the elicited police procedure, the State educed:

"Q   Officer, how many recent photographs were there?

MR. SACKS: Object, Your Honor.

MR. LUNTZ: Objection.

THE COURT: Of who?

MR. FLANNERY: Of the Defendant, Wayne White.

MR. LUNTZ: Objection, Your Honor.

THE COURT: Well, I'll sustain the objection to how many. How many were taken within that prescribed time?

MR. SACKS: Object.

MR. LUNTZ: I object to that question also.

THE COURT: Overrule the objection. You opened the door to the questions.

A   There were two photos taken in the month of January, 1982, one on the 27th.

MR. LUNTZ: Your Honor, I would object to that. The question had nothing to do with previous photos.

THE COURT: I overrule the objection.

Q (BY MR. FLANNERY) Now, those photographs were taken in two different districts, weren't they?

MR. SACKS: Object, Your Honor, to the form of the question.

A That's correct.

THE COURT: Overruled.

Q (BY MR. FLANNERY) You say that's correct?

A Yes, sir.

Q Which district?

A One on the 27th was taken in the Central District, the one on the 19th taken in the Southeast District.

Q Both in January of this year?

A That's correct.

Q Now, if Mr. White had been beaten, would they still have taken—

MR. SACKS: Object, Your Honor, to the form of the question.

Q (BY MR. FLANNERY) Would they still have taken a photograph of him at the booking procedures?

THE COURT: I'll let him answer the question.

MR. SACKS: He said he didn't know the booking procedures when I asked him the question. He says he knows nothing about that. It's done in the cell block. He knows nothing about booking.

THE COURT: Can you answer the question?

A If the subject has been cut or any marks on him, that has no bearing on whether he's photographed.

THE COURT: All right."

Appellant complains with ill grace, we think, that:

"The trial court erred in admitting evidence that Appellant had recently been arrested on unrelated charges."

The judge's response that appellant had "opened the door to the questions" is adequate, if not sufficient, to respond to appellant's complaint. Judicially, a "you asked for it" answer smacks of juvenile rhetoric; but, however stated, it

carries the connotative reasoning of the doctrine we refer to as "verbal completeness".

> " 'When any part of an oral statement has been put in evidence by one party, the opponent may afterwards (on cross-examination or re-examination) put in the remainder of what was said on the same subject at the same time.' " *Worthington v. State,* 38 Md.App. 487, 491, 381 A.2d 712 (1978), *cert. denied,* 282 Md. 740 (1978), quoting 7 *Wigmore on Evidence,* § 2115 (3d ed.).

This rule of completeness is equally applicable whether applied to oral supplementary statements introduced to provide the full picture, or used as a principle of admissibility under which evidence that is irrelevant or otherwise incomplete may be allowed to be answered to correct a prejudicially misleading impression left by the introduction of misleading evidence. According to McCormick, *Evidence,* § 57 (2d ed. 1972), most courts seem to say generally that one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is allowed to avail himself of the opening. Irrelevant evidence can not become relevant simply because it is capable of being contradicted and will thereby impeach a witness. *Smith v. State,* 273 Md. 152, 158, 328 A.2d 274 (1974). To justify rebuttal of the irrelevancy there must be something more. One such instance when the "door is opened" is most pronounced when, as in this case the questionably relevant evidence as initially admitted will clearly prejudice an opponent unless the opponent can meet the evidence. 1 Wigmore, *Evidence,* § 15 (3d ed.). Testimony that appellant was beaten upon arrest is peripherially relevant, at best, in regard to whether he committed an armed robbery. Furthermore, there was no evidence or statement, the admissibility of which rested upon the validity of the arrest. When convincingly proven such evidence is certainly prejudicial to the State upon whose officers the proof of the crime relies, if they are shown to have criminally assaulted the accused. Upon such evidence, supported by the police failure to have photo-

graphed the allegedly beaten appellant, the State could hardly be expected to stand mute when it is the State's own procedure that has been used to support the irrelevant accusation. After having denied the brutality charge, the officer was properly permitted to explain why there was no picture taken of appellant.

Straining even farther, appellant complains:

"The trial court erred in admitting evidence that the arresting officer 'knew of' Appellant prior to arresting him in this case."

This was elicited when the State sought to have the officer explain why he approached the defendants with his revolver drawn at the time of arrest. He explained that the crime alleged indicated that they were armed and that he "knew of" the defendants anyhow.

We do not agree that

"[t]he obvious inference to be drawn from Gutberlet's testimony is that Appellant had been arrested or otherwise involved in trouble with the police on an earlier occasion,"

as argued by appellant. It is *an* inference which one might draw but not necessarily *the* obvious one. Assuming it were, however, the officer had previously testified that once the victim had identified the photographs of the defendants, he knew them by sight. If the inference was obvious the second time, it was equally obvious the first and appellant chose not to object initially. In like manner, if the testimony was not prejudicial the first time absent objection, its repetition subject to objection does not make it so. See *Peisner v. State,* 236 Md. 137, 144, 202 A.2d 585 (1964). Beyond that, when appellant subjected himself to testimony of prior arrests, how the officer "knew of" him was implicit and consequently made harmless, beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.