499 A.2d 492

**Ronald Wayne NEWMAN**

v.

**STATE of Maryland.**

**No. 96, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 7, 1985.

Certiorari Denied Feb. 25, 1986.

Reginald W. Bours, III (John C. Monahan and Bours & Monahan, Rockville, and Clarence W. Sharp, Annapolis, on brief), for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty. for Prince George's County and Joseph E. Chazen, Asst. State's Atty. for Prince George's County, on brief, Upper Marlboro), for appellee.

Argued before ALPERT, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Appellant, Ronald Wayne Newman, was charged with raping and otherwise sexually abusing a thirteen year old girl who babysat his girlfriend's children at his home. Following a jury trial in the Circuit Court for Prince George's County, he was convicted of two counts of sex offense in the third degree and of child abuse. Although on his appeal to this court appellant challenges his conviction on six grounds, we need only consider three:

1. The trial judge improperly admitted the unsworn pre-trial statement of a defense witness, which statement contained details, furnished by the alleged victim, of certain sexual and other offenses, including some not on trial; [1]

2. There was insufficient evidence to sustain the charge of child abuse.

3. The trial judge plainly erred by precluding appellant's attorney during his closing argument from quoting a passage on reasonable doubt from a Supreme Court case.

We find that the trial judge committed reversible error in admitting the statement of the defense witness under the

---

1. Mrs. Lechman's, the defense witness' statement is set out in full as an appendix to this opinion.

doctrine of "verbal completeness" and thus, we remand for a new trial. We will address the remaining issues for the guidance of the trial court on remand.

As expected, the chief witness against appellant was the victim. After identifying appellant, she gave the following testimony. When she was twelve years old, in June, 1983, without her parents' permission, she advertised for a baby-sitting position and obtained a position babysitting the children of appellant's girlfriend at appellant's home. In all, the victim babysat at appellant's home at least ten times, excluding November and most of December, 1983. Although her first assignment babysitting at appellant's home was arranged by appellant's girlfriend, appellant, as he did throughout this period, transported her between her house and his.

The first time the victim babysat, nothing out of the ordinary occurred. The next month, in July, she babysat at appellant's home a second time without incident. As appellant was driving her home, however, he felt her vagina, "underneath" her clothes, without her consent. The victim did not report the incident to her parents or tell anyone else about it because she was "too embarrassed." A similar incident occurred after completion of her next babysitting assignment at appellant's home—while the victim was being driven home, appellant felt the victim's breasts. This incident also went unreported, again, because she was embarrassed and also because, having seen appellant hit his girlfriend's children, she was afraid of him. Nor did she report yet another incident in which appellant felt her vagina while bringing her home. On this occasion, she said that appellant told her, "If you tell anyone what I did to you, you will get hurt."

On some occasions when the victim babysat at appellant's home, appellant and his girlfriend would remain at home and engage in sexual intercourse in the living room in her presence. On other occasions, the victim slept over. The first time she slept over, she slept, at appellant's sugges-tion, in appellant's bed. She was told that there were no

other beds in the house. Although she was not involved in any sexual activities, appellant and his girlfriend engaged in sexual intercourse in her presence. The next time she slept over, appellant touched her between her legs. In the middle of September, 1983, while babysitting at appellant's home, the victim, who had gone to appellant's room, was pushed on the bed and, when she attempted to get up, hit in the face. After forcing her to take off her clothes, appellant raped her. At the time of the rape, the victim saw a knife in the room. After the rape, appellant felt her breasts and between her legs. As he was taking the victim home, he told her that if she told anyone what had happened to her while babysitting he would hurt her.

The victim did not report the rape, and she continued to babysit at appellant's home.

In addition to sexually abusing her, appellant made the victim drink something which made her tired and sleepy. She drank it because appellant said he would hurt her if she did not.

The victim last babysat at appellant's home on New Year's Eve, 1983. Shortly after that assignment, which was completed without incident, appellant accused the victim of stealing his checks. Thereafter, the victim told one of her friends what appellant had done to her. She later told her friend's mother, Mrs. Lechman, who subsequently gave a statement recounting that conversation to the police.

On cross-examination, appellant, in addition to asking the victim questions designed to attack her credibility, specifically asked the victim if she had told Mrs. Lechman that she had not babysat at appellant's home on New Year's Eve. The victim absolutely and unequivocally denied having made that statement.

### 1.

Appellant's defense was aimed at attacking the credibility of the victim and showing "her motive for making false allegations many months after the events allegedly occurred." When the victim testified at trial that she had last

babysat in appellant's home on New Year's Eve, 1983 and denied having told Mrs. Lechman that she had not babysat on that date, appellant called Mrs. Lechman to show that the victim had made a prior inconsistent statement. After she was shown a statement and had identified and authenticated it as the statement she gave to the police, Mrs. Lechman was questioned as follows:

Q. One point that I am permitted to ask you about is this—a point in your statement begins: "She was also upset that a man had accused her"—"that the man," rather, "had accused her of stealing some checks from him."

Do you remember Michelle telling you that?

A. Yes.

Q. Did she also say to you that she was supposed to have been babysitting for him on New Year's Eve, but did not?

A. Right.

Q. Did she say shortly after that, he called her at her home and accused her of stealing them? Did she say that to you?

A. Yes.

Q. Did she also tell you that she had not stolen them, that she hadn't been at his house for a while?

A. That's correct.

Q. So she told you all of those things?

A. Right.

The State's cross-examination consisted solely of inquiry as to the victim's physical and emotional state when she spoke to Mrs. Lechman and as to Mrs. Lechman's actions following the conversation.

After all of the evidence had been presented and both sides had rested, the State moved Mrs. Lechman's entire statement into evidence:

MR. CHAZEN: [State's Attorney]: For the reason that under the doctrine of verbal completeness, that where defense counsel read into the Court part of the state-

ment, that I think it is fair and that case law backs me up that the jury should then have the benefit of the entire statement so they get the whole picture, not just a couple sentences where he wants to show she was inconsistent in one or two sentences, and then get rid of consistencies throughout the whole thing.

Appellant objected, stating:

MR. BOURS: I don't think there is anything else in that statement that bears on the topic that I used as the testimony for the defendant. The topic that we were talking about in our testimony was only whether or not [the victim] claimed that she had not babysat on New Year's Eve. That is the only topic we discussed in her testimony. I think I would not characterize my admitting that statement in evidence so much as allowing the witness to refresh her recollection by looking at it. She agreed. She testified here in effect to the same effect of what is in the statement. So I think her testimony stands without reference to the statement, if necessary. The other matters that are in that statement do not explain or clarify the part that she did testify about. They go into the details of the alleged rape incident. All I went into was the question of whether or not [the victim] said that she hadn't babysat for the defendant.

The statement was admitted.

Noting that the victim's credibility was the focal point of the defense (indeed, the central issue in the trial) and that, in effect, Mrs. Lechman's statement was "the allegations of [the victim], not the witness," appellant contends that the trial judge erred in admitting the statement for several reasons: first, the statement contained matters which exceeded the scope of the direct examination; second, it was not rebuttal testimony; third, it contained allegations of uncharged crimes;[2] fourth, it was prejudicial and denied

---

2. Appellant argues that the uncharged crimes alleged in the statement were: appellant made the victim drink some sort of alcoholic beverage which made her sick and that appellant and his girlfriend per-

confrontation because it was introduced after the close of the evidence, when the victim was no longer available for cross-examination; and fifth, "it was classic hearsay and not admissible under any traditional exception." Appellant requests that we find the error to be reversible and remand for a new trial.

Contending that it "was entitled to introduce the remainder of [Mrs. Lechman's] statement because it related to the same subject, [the victim's] statements to the witness about her contacts with Appellant, and, [because] it was relevant evidence," the State urges that the trial judge correctly admitted the statement under the rule of "verbal completeness." In an attempt to limit the scope of our review, it also argues, that appellant's voluntary statement of the grounds for his objection preserved only those grounds stated. But, notwithstanding the preceding argument, the State hedges, recognizing that we may not adopt the trial judge's rationale for the ruling, and submits an alternative basis—"the ... statement [is] a memorandum employed to refresh a witness' present recollection introduced by an opposing party."—on which the statement could have been admitted.

We agree that when a party volunteers the grounds on which he relies for his objection, he ordinarily waives all grounds not mentioned, and preserves for review only those stated. *von Lusch v. State,* 279 Md. 255, 368 A.2d 468 (1977). On the other hand, when the offering party volunteers the grounds upon which it relies for admissibility and the trial judge admits the evidence without specifically adopting those grounds, his ruling may be affirmed on appeal if the record discloses a proper basis for its admission. *Robeson v. State,* 285 Md. 498, 403 A.2d

---

formed unspecified sexual acts and fellatio in front of her. In her direct testimony, the victim referred to an incident in which she was forced to drink some unknown beverage which made her tired. She also testified to appellant and his girlfriend having intercourse in her presence.

1221 (1979). Therefore, we will first address the State's alternative theory for the admissibility of the statement.

■ Because it is the testimony of the witness, not the memory stimulant, that is admitted into evidence, a document, including the witness' own statement, may be used to refresh recollection "without restriction by rule as to authorship, guarantee of correctness, or time of making." *Askins v. State*, 13 Md.App. 702, 711, 284 A.2d 626 (1971). This is so because the document is not evidence; it is only an aid in the giving of testimony. *McCormick on Evidence*, § 9, 3rd ed. 1984, p. 21, *Baker v. State*, 35 Md.App. 593, 371 A.2d 699 (1977). The document will not be admitted at the behest of the party calling the witness unless it is independently admissible under the hearsay rule or one of its exceptions. *McCormick, supra*. The opposing party, however, may use it during its examination of the witness and may even offer it for impeachment purposes. *Wilson v. State*, 20 Md.App. 318, 330, 315 A.2d 788 (1974). *See Baker v. State, supra*, 35 Md.App. at 600, 371 A.2d 699 ("The opposing party, of course, has the right to inspect the memory aid, be it a writing or otherwise, and even to show it to the jury. This examination, however, is not for the purpose of testing the competence of the memory aid (for competence is immaterial where the thing in question is not evidence) but only to test whether the witness's memory has in truth been refreshed"). The object of the attempt at impeachment is to show that the document did not refresh the witness' recollection or that the recollection allegedly refreshed is unreliable or even that the document itself is false. *See e.g. U.S. v. Rappy*, 157 F.2d 964, 967–68 (2nd Cir.1946). It is then the impeachment of the refreshed recollection of the witness on the stand, not the bolstering of testimony previously given by other witnesses, at which the admission of the document is directed.

■ Here, no issue was raised regarding the reliability of Mrs. Lechman's recollection or the accuracy of her statement. Significantly, the State refrained from cross-exam-

ining her on those issues. Interestingly, the significance of the remainder of the statement was principally to show its consistency with the victim's trial testimony. Nothing in the statement itself tended to impeach Mrs. Lechman's recollection. Given this state of the record, the statement was not admissible as a memorandum used to refresh recollection offered by the opposing party.[3] Furthermore, the effect of the admission of the statement was to allow it to be received and used by the jury as substantive evidence, with the predictable result that it would bolster the victim's prior testimony by showing "consistencies throughout the whole thing." For this reason as well its admissibility cannot be justified.

We now turn to the State's theory that the statement was admissible for verbal completeness.

Where a party has introduced a part of a writing, oral statement or conversation, his opponent may afterward introduce the remainder of the writing, oral statement or conversation which was written or said on the same subject at the same time. 7 Wigmore, Evidence, § 2115 (Chadbourne rev. 1978); *Feigley v. Balto. Transit Co.*, 211 Md. 1, 124 A.2d 822 (1956); *Worthington v. State*, 38 Md.App. 487, 381 A.2d 712 (1978); *White v. State*, 56 Md.App. 265, 467 A.2d 771 (1983) *cert. den.*, 299 Md. 137, 472 A.2d 1000 (1984). This is equally true in the situation where a part of a statement is introduced or referred to in the course of impeaching a witness by showing bias or a prior inconsistent statement. *Worthington v. State, supra.* This principle is referred to as "verbal completeness," the rationale for

---

**3.** It might have been contended that this situation is not an instance of present recollection revived. The record reflects that, following a bench conference at which appellant's counsel was "advised" to "get down to the prior inconsistent statement" and "get directly to it", appellant's counsel directed the witness' attention to her statement and, by reference to those portions relating to the prior inconsistent statement, expeditiously elicited the relevant testimony. There is nothing in the record to suggest a failure of memory, evasiveness or unfriendliness on the part of Mrs. Lechman. *See Wilson v. State,* supra, 20 Md.App. at 329, 315 A.2d 788.

which is fairness in allowing an explanation to be given as to the impeaching material and in providing a complete picture for the trier of fact. Although, as Wigmore points out, the right to introduce the remainder is universally conceded for every kind of utterance without distinction, in each case where the applicability of "verbal completeness" is at issue, the relevant inquiry is what are its scope and limits in that case:

> The ensuing controversies are in effect concerned merely with drawing the line so that the opponent shall not, under cloak of this conceded right, put in utterances which do not come within its principle and would be otherwise irrelevant and inadmissible. In the definition of the limits of this right, there may be noted three general corollaries of the principle on which the right rests, namely:
>
> (a) No utterance irrelevant to the issue is receivable;
> (b) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable;
> (c) the remainder thus received merely aids in the construction of the utterance as a whole, and is not in itself testimony.

7 Wigmore, Evidence, § 2113 (Chadbourne rev. 1978) (citation omitted). *See also Feigley v. Balto. Transit Co., supra.* Thus, to be admissible, the remainder must not only relate to the subject matter, but must also tend "to explain and shed light on the meaning of the part already received." *Bowers v. State,* 298 Md. 115, 468 A.2d 101 (1983), McCormick, *Evidence,* § 56 (3rd ed. 1984) or "to correct a prejudicially misleading impression left by the introduction of misleading evidence." *White v. State, supra* [56 Md.App.] at 273, 467 A.2d 771.

▮ In the case *sub judice,* appellant impeached the victim's trial testimony by demonstrating, through Mrs. Lechman's testimony and by reference to Mrs. Lechman's pretrial statement, that the victim had made a prior inconsist-

ent statement on the narrow issue of whether she had babysat for appellant on New Year's Eve. Unlike the situation in *White v. State, supra,* the evidence, although prejudicial to the State's case, was relevant and competent, and it was not misleading. The remainder of Mrs. Lechman's statement, while made at the same time as the portion referred to by appellant, is not on the same subject. Rather than explaining and shedding light on the victim's denial of having babysat at appellant's home on New Year's Eve, it merely contains the details of the alleged rape and other occurrences which the victim claimed happened on other occasions. The victim's denial that she babysat on New Year's Eve was not then out of context and, therefore, was not misleading. We conclude that the trial judge erred in admitting the remainder of Mrs. Lechman's statement on the theory of verbal completeness. In so concluding we are aware that in *Worthington v. State, supra,* the remainder of the statements of the victim and of another State's witness were permitted to be introduced for verbal completeness after the defendant had introduced a portion of them; however, in that case, the remainder did explain and otherwise shed light on the portions previously admitted. *Id.* [38 Md.App.] at 492, 381 A.2d 712.

We now consider if the error was harmless beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). Most of the remainder of Mrs. Lechman's statement was cumulative of the victim's testimony; some, however, was not. The statement refers to appellant and his girlfriend making her drink something she thought was wine; her trial testimony was that she was made to drink something, which she did not characterize, that made her tired and sleepy. The statement refers to appellant's girlfriend performing fellatio and to appellant and his girlfriend doing other unspecified "sexual things in front of her"; her trial testimony was that they performed intercourse in front of her. Therefore, the statement, to some extent, contained allegations of other uncharged criminal acts and of appellant's bad character. Unless such evidence is "substantially

relevant for some other purpose than to show a probability that [the appellant] committed the crime on trial because he is a man of criminal character", *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976), the admission of such evidence because of its prejudicial effect, may be cause for reversal. *Id.; See, Cox v. State,* 298 Md. 173, 468 A.2d 319 (1983). Having concluded that the reason advanced does not support the statement's admissibility, we are unable to say that its contents are substantially relevant for some other purpose. More importantly, however, although most of the statement was cumulative of the victim's trial testimony, that fact, while relevant to the determination of whether the error was harmless, is not dispositive. Here the State's case depended virtually exclusively on the victim's credibility. By allowing the remainder of the statement, the victim's testimony was bolstered by prior consistent statements.[4] Such bolstering when, as here, the issue is essentially one of credibility, is not harmless error. *See Cox v. State, supra.*

### 2.

■ Apparently conceding the sufficiency of the other elements of child abuse, appellant posits that the State failed to prove that he was "a person who [had] the permanent or temporary custody or responsibility for supervision of [the victim] as required by Maryland Code Annotated, Art. 27, § 35A." He therefore argues that the evidence was insufficient to sustain his conviction for child abuse.

---

**4.** This is not an appropriate factual context for admission of a prior consistent statement. *See, Finke v. State,* 56 Md.App. 450, 492–94, 468 A.2d 353 (1983). To be admissible as a prior consistent statement, a statement must meet two criteria: "(1) the witness whose prior statement is being offered must have been impeached so as to indicate that his [or her] present testimony is a fabrication and (2) that the prior statement was made before the time of probable fabrication." Here, the consistent statements were part and parcel of the statement in which the inconsistent statement proven appears. They, therefore, are not "prior." Equally important, when the victim spoke to Mrs. Lechman, she was already aware of appellant's accusation; consequently, the statements were not made prior to the time of probable fabrication.

Although we would ordinarily refuse to consider this issue because not properly preserved for review, *Lyles v. State*, 63 Md.App. 376, 492 A.2d 959 (1985), for the guidance of the trial judge on remand, we will address it. In addition to evidence that appellant transported the victim to and from her babysitting job, there was evidence that he paid her for babysitting on several occasions and that the babysitting was done in appellant's home. The victim's mother also testified that appellant "was to take care of [the victim] and insure her safety to and from the house." Admittedly, there was evidence which tended to negate this conclusion; however, because "[the] person may have the responsibility for the supervision of a minor child in the contemplation of § 35A although not standing in loco parentis to that child" *Pope v. State*, 284 Md. 309, 323, 396 A.2d 1054 (1979), the existence of the requisite responsibility is a question of fact for the jury. *Bowers v. State*, 38 Md.App. 21, 379 A.2d 748 (1977), *affirmed on other grounds*, 283 Md. 115, 389 A.2d 341 (1978).

The jury determined, after proper instruction, that appellant had the requisite responsibility for the victim. There was legally sufficient evidence, or inferences deducible therefrom, to support that finding. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Tichnell v. State*, 287 Md. 695, 415 A.2d 830 (1980).

### 3.

Appellant also argues that the trial judge plainly erred by instructing the jury that his instructions on the law were binding and by subsequently preventing appellant from quoting a passage on reasonable doubt from a Supreme Court opinion.

The jury was instructed:

I am here to see that both parties get a fair trial, and I make rulings on issues of law during the course of the trial. That is my function and my function alone. What I tell you concerning the law is binding upon you. That means that you may not ignore it. You may not substi-

tute your judgment for it. You may not make the law what you think the law ought to be, but you are bound to apply the law as I tell you that it is.

. . . .

Now, that concept [reasonable doubt] in its easiest definition form is defined as proof beyond any doubt based upon some good, sound reason. The State is not, however, required to prove guilt beyond all possible doubt or to a mathematical certainty, nor is the State required to make out every conceivable circumstance of innocence.

. . . .

As I have told you, a reasonable doubt is a doubt founded upon reason. It is not a fanciful doubt or whimsical or a capricious doubt. It is such a doubt that would cause a reasonable person to hesitate to act in the graver or more important transactions of life. That concept, reasonable doubt, requires you to look at the evidence in terms of its quantity and quality.

Although believing the definition of reasonable doubt to be weaker than he thought it ought to be, appellant's counsel did not object to these instructions. Rather, during his closing argument, he attempted to read a passage, defining reasonable doubt, from *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The State objected and the court sustained its objection.

Any objections which a party may have to the court's instructions must be made "on the record promptly after the court instructs the jury ..." Maryland Rule 4–325(e). If the objection is not seasonably made, the issue is waived. *Id., Leatherwood v. State,* 49 Md.App. 683, 435 A.2d 477 (1981), Maryland Rule 1085. The appellate court, "on its own motion or on suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant ..." Maryland Rule 4–325(e). *State v. Hutchinson,* 287 Md. 198, 411

A.2d 1035 (1980), *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977).

> The jury's function
>
> in judging the law under Article 23 [of the Maryland Declaration of Rights] is confined *"to resolv[ing] conflicting interpretations of the law [of the crime]* and to decid[ing] whether th[at] law should be applied in dubious factual situations,"* and nothing more. *Dillon v. State,* 277 Md. 571, 581, 357 A.2d 360, 367 (1976) (emphasis in original)

*Stevenson v. State,* 289 Md. 167, 178–179, 423 A.2d 558 (1980), from which it implicitly follows that:

> all other aspects of law [e.g., the burden of proof, the requirement of unanimity, the validity of a statute) are beyond the jury's pale, and that the judge's comments on these matters are binding upon that body.

*Id.* at 180, 423 A.2d 558. Therefore, unless there exists "a dispute as to the proper interpretation of the law of the crime for which there is a *sound basis"* (emphasis in the original), *Montgomery v. State,* 292 Md. 84, 89, 437 A.2d 654 (1981), the court's instructions as to the law "are binding on the jury and counsel as well." *Id.* at 89, 437 A.2d 654. *See also Robertson v. State,* 295 Md. 688, 457 A.2d 826 (1983); *Smiley v. State,* 294 Md. 461, 450 A.2d 909 (1982); *Woodland v. State,* 62 Md.App. 503, 490 A.2d 286 (1985). This standard is reflected in Maryland Rule 4–325:

> (c) The court may, and at the request of any party shall, instruct the jury as to the applicable law and the *extent to which the instructions* are binding. (emphasis added)
>
> . . . . .
>
> (f) Nothing in this Rule precludes any party from arguing that the law applicable to the case is different from the law described in the instructions of the court *stated not to be binding.* (emphasis added)

The trial judge correctly precluded appellant from arguing the definition of reasonable doubt set out in *In Re*

*Winship, supra.*[5] "Arguing law includes stating, quoting, discussing or commenting upon a legal proposition, principle, rule or statute." *Bonner v. State,* 43 Md.App. 518, 524, 406 A.2d 646 (1979). Quoting the Supreme Court's definition of reasonable doubt as reported in one of its opinions is arguing law. *Id.* Before 1980 when the jury's law-judging function was virtually unrestricted, arguing law, including quoting from caselaw was entirely proper, *See, e.g. Brown v. State,* 222 Md. 290, 159 A.2d 844 (1960); *Bonner v. State, supra; Pierce v. State,* 34 Md.App. 654, 369 A.2d 140 (1977), *cert. denied* 434 U.S. 907, 98 S.Ct. 307, 54 L.Ed.2d 194 (1978), and necessary because it was addressed to the judge of the law. When that function was redefined and accordingly restricted, the propriety, indeed the need, for such arguments was correspondingly diminished. In fact, the jury's involvement in some "aspects of law" was specifically and unequivocally removed. One such aspect is the burden of proof.

■ The burden of proof, specifically enumerated in *Stevenson,* is one of the "aspects of law" which is entrusted to the judge, and not the jury, whether there is a dispute as to the law of the crime or not. As such, the judge alone has responsibility for determining and instructing on that issue and the instructions thus given are binding on jury and counsel alike. Determining and instructing as to the burden of proof necessarily includes, and therefore involves, defining the standard by which it can be measured if the burden has been met.

---

**5.** The passage appellant proposed to read was:
"Moreover, use of the reasonable doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper fact finder of his guilt with *utmost certainty.*" [Emphasis supplied] quoting from 90 S.Ct. at 1068.

 Accordingly, to hold that counsel are permitted to read caselaw regarding the definition of reasonable doubt to a jury, whose only function is to determine the facts and, if appropriate, the law of the case, would be to permit the usurpation of the court's function and to again place a broader law-judging function in the jury. This, we cannot and will not do. The court committed no error, plain or otherwise.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR NEW TRIAL.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

APPENDIX

STATEMENT: While I was getting ready for bowling one Fri. evening, Valerie came into my room + asked to talk to me about something personal. Valerie stated to me that Michelle Long had been raped. I asked Valerie to see if Michelle wanted to talk to me. Michelle began to tell me about a man + woman she babysat for. She said that the man + woman forced her to drink something which she thought was wine + she became sick from it. She said he then raped her. I asked if he had put his penis into her + she said yes. She said, many times she went to babysit for them + they would not go out anywhere. They would do sexual things in front of her. One instance she recalled was watching the woman put her mouth on the mans penis in front of her, watching them. Michelle stated that the woman had told her that she was raped, when she was Michelle's age + that she had liked it so she thought that Michelle should like it too. Michelle said that many times, she did not want to go to babysit + the man would call + arrange for her to go with her parents. I asked Michelle why she hadn't told her parents + she said that the man had told her she better not ever tell or he would hurt her. She was vague, but said the man had felt over her many times + had performed different sexual acts in front of her. She was also upset that the man had accused her of stealing some checks from him. She was supposed to have gone babysitting for him on New Years Eve but did not. Shortly after that, he called her at home + accused her of stealing them. She stated to me that she had not, she hadn't been at his house for awhile. Michelle was also concerned that she had gained 10 pounds during the past couple months. She thought it might be related to him raping her. I convinced Michelle that she would have to tell her mother + she agreed. She asked to have myself + Valerie back her story up + give her support. Michelle also stated that once the man had penetrated her, she either passed out or fainted.