524 A.2d 1239

Joseph A. PASCHALL

v.

STATE of Maryland.

No. 1111, Sept. Term, 1986.

Court of Special Appeals of Maryland.

May 7, 1987.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore

City, Sherry Aarons and William Guiffre, Asst. State's Attys. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before ALPERT, BLOOM and KARWACKI, JJ.

BLOOM, Judge.

A jury in the Circuit Court for Baltimore City, presided over by Judge Martin Greenfeld, convicted appellant, Joseph Anthony Paschall, of two counts of felony murder, robbery with a deadly weapon, and three counts of use of a handgun in the commission of a crime of violence. Appellant received two sentences of life imprisonment and two sentences of twenty years, all of which were ordered to run consecutively.

The issues in this appeal, as presented by appellant, are as follows:

1. Whether the trial court erred in admitting a portion of the pre-trial statement of a witness under the doctrine of verbal completeness.
2. Whether the trial court abused its discretion in refusing to allow impeachment of a witness for the State with a prior conviction of malicious destruction of property.

For the reasons set forth below, we reject appellant's assertions of error and affirm his convictions.

### Facts

In the course of a holdup at the Wilkens II Bar, shortly after 1:00 a.m. on January 21, 1985, a masked gunman shot and killed William and Wanda Garrison, the bartender and barmaid on duty at the tavern that night.

There was a considerable body of strong circumstantial evidence pointing to appellant as the criminal agent, but the only eyewitness to the robbery was William Schmuff. Schmuff had left the bar around midnight but returned

around 1:00 a.m., at which time appellant was the only other patron on the premises. Shortly thereafter, Wanda Garrison made the call for last rounds, at which time appellant went to the men's room. A few moments later, appellant came out of the men's room wearing a ski mask, brandishing a handgun and announcing a holdup. Schmuff, who had known appellant for six months to a year prior to the crime and knew him by name, testified that he saw appellant take money out of the cash register but did not see or hear any shots. Schmuff ran outside and hid under a car. Later, after he emerged from his hiding place, he observed appellant leave the bar with a gun and a bag of money in his hands.

On cross-examination of Schmuff, appellant's counsel was able to demonstrate inconsistencies as to several details between the witness's testimony in court and earlier statements made by Schmuff to the police. There were also inconsistencies between Schmuff's testimony in court and his earlier testimony before the grand jury. Later in the trial, defense counsel sought to introduce a portion of a written statement Schmuff had given the police, in order to illustrate further inconsistencies between the statement and the witness's testimony. The portion of the statement that appellant's counsel wanted to introduce was as follows:

He went behind the bar and grabbed Wanda. He threw a brown paper bag on the bar and told me to get the money. I just sat there. I told Wanda to do as he said. So, Tony walked Wanda down to the cash register, and she got the money for him.

After that he walked her back down the bar and around like you go to the basement. When they started down the basement steps, I ran out the side door and hid under a car. Then Tony ran out the bar right past me. He ran down Wilkens Avenue toward Monroe Street. Actually, he was walking and not running.

The State initially requested that all of Schmuff's multiple page statement be admitted under the doctrine of verbal completeness or to demonstrate prior consistency between

Schmuff's pre-trial statement and trial testimony, but later modified its position. Instead of insisting upon introducing the entire pre-trial statement if any part of it were introduced by appellant, the State requested only that the court admit the entire response by Schmuff to the question that gave rise to the portion appellant wanted to admit. In short, the State merely sought to have introduced "one complete answer to one complete question." [1]

The trial judge ruled that the portion of Schmuff's pre-trial statement offered by the defense would be admitted, but he also ruled that the following sentences immediately preceding that portion would be admitted as well, under the doctrine of verbal completeness:

Well, we were sitting there drinking a beer. It was me, Tony, Wanda, the barmaid, and her husband, Bill. Wanda said it was closing time, for everyone to finish their beers, because we had to go. She had already locked the front door. Tony went to the bathroom. Then he came out.

He had a mask on. He then said, "It's a holdup." He had pulled out a gun.

The trial judge elaborated:

[T]his one paragraph at the bottom of page one is a running narrative by the declarant about what happened. The only way to fairly give a jury the proper understanding and perspective and impression of what the person making the statement said was to give them that entire running narrative.

It is grossly unfair—it is grossly misleading—to pick and choose little phrases, separate items from that paragraph, even though those phrases are inextricably intertwined with the entire statement as given or at least that narrative—that uninterrupted narrative—that was given.

---

**1.** The question asked was: "Can you tell me in your own words how the murder took place?"

## I

Appellant contends that the trial court erred in permitting the State, under the doctrine of "verbal completeness," to introduce into evidence those few sentences in the eye-witness's pre-trial statement that immediately preceded the matter introduced by the defense. We disagree.

In *Newman v. State,* 65 Md.App. 85, 499 A.2d 492, *cert. denied,* 305 Md. 419, 504 A.2d 1152 (1986), we discussed at length the doctrine of verbal completeness. We noted that:

Where a party has introduced a part of a writing, oral statement or conversation, his opponent may afterward introduce the remainder of the writing, oral statement or conversation which was written or said on the *same subject at the same time.* [Citations omitted.] This is equally true in the situation where a part of a statement is introduced or referred to in the course of impeaching a witness by showing bias or a prior inconsistent statement.

65 Md.App. at 95, 499 A.2d 492 (emphasis added).

Fairness is the *raison d'etre* of the doctrine in that it allows "an explanation to be given as to the impeaching material and in providing a complete picture for the trier of fact." *Id.* at 96, 499 A.2d 492. *See also White v. State,* 56 Md.App. 265, 273, 467 A.2d 771 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984).

■ There are, nonetheless, limitations on the right of a party to introduce the remainder of a statement or utterance, namely:

(a) No utterance irrelevant to the issue is receivable;

(b) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable;

(c) The remainder thus received merely aids in the construction of the utterance as a whole, and is not in itself testimony.

*Newman, supra,* 65 Md.App. at 96, 499 A.2d 492 (citing 7 Wigmore, *Evidence* § 2113 (Chadbourne rev. 1978)). *See*

also *Bowers v. State,* 298 Md. 115, 134, 468 A.2d 101 (1983); *Feigley v. Baltimore Transit Co.,* 211 Md. 1, 10, 124 A.2d 822 (1956).

To be admissible, therefore, the remainder must not only relate to the same subject matter but must also tend either "to explain and shed light on the meaning of the part already received," or to "correct a prejudicially misleading impression left by the introduction of misleading evidence." *Newman, supra,* 65 Md.App. at 96, 499 A.2d 492; *White, supra,* 56 Md.App. at 273, 467 A.2d 771.

Appellant contends that the portion of the statement admitted at the behest of the State did not "explain and shed light on the meaning of the part already received" at the request of the defense. He argues that the portion of the statement which he offered related only to the question as to whether it was appellant (as Schmuff testified at trial) or Wanda Garrison (as Schmuff informed the detective) who took the money from the register and whether appellant had ever grabbed Mrs. Garrison. The disputed portion admitted at the State's request, appellant asserts, is irrelevant to those issues and merely served to bolster Schmuff's credibility.

Appellant's reading of *Newman* and his interpretation of verbal completeness are unreasonably restrictive. In *Newman,* the alleged victim complained that she was sexually abused on several occasions while babysitting at the accused's home and that ultimately she was raped. The victim reported the incidents to a Mrs. Lechman. At trial, after the victim testified that she babysat at appellant's home on New Year's Eve, she was asked whether she had told Mrs. Lechman on a prior occasion she had not babysat for the accused on New Year's Eve. The victim denied making such a statement to Mrs. Lechman, whereupon the defendant sought to impeach her by offering that portion of Mrs. Lechman's pre-trial statement that was at variance with the victim's testimony concerning her whereabouts on New Year's Eve. The State then offered Mrs. Lechman's entire pre-trial statement under the doctrine of verbal com-

pleteness, and the court admitted it. We held that the trial court erred in admitting the entire statement. Appellant had impeached the victim's testimony on the narrow issue of whether she had babysat for the accused. We pointed out that the

> remainder of Mrs. Lechman's statement, while made at the *same time* as the portion referred to by appellant, is *not on the same subject.* Rather than explaining and shedding light on the victim's denial of having babysat at appellant's home on New Year's Eve, it merely contains the details of the alleged rape and other occurrences which the victim claimed happened on *other occasions.* The victim's denial that she babysat ... was not then out of context and, therefore, was not misleading.

65 Md.App. at 97, 499 A.2d 492 (emphasis added).

■ In this case, the portion of Schmuff's pre-trial statement that was introduced by the State related to the *same subject,* the manner in which the robbery occurred; it was made at the *same time* as the portion introduced by the defense; and it did shed light on the part already received in that it enabled the trier of fact to understand the precise context in which the statement introduced by defense counsel was made. It therefore provided the jurors with a fairer, "more complete picture" of Schmuff's pre-trial version of the incident. To have allowed defense counsel to introduce select portions of the pre-trial statement relating to the robbery that were inconsistent with Schmuff's trial testimony without allowing the State to establish the basic consistency, on the same subject matter, between the prior statement and Schmuff's trial testimony would, in the words of the trial judge, have been "grossly misleading" to the jury. *See Worthington v. State,* 38 Md.App. 487, 381 A.2d 712; *cert. denied,* 282 Md. 740 (1978) (after defense counsel was permitted to introduce select portions of the pre-trial statements of two witnesses regarding a shooting incident, the State was permitted to introduce the remainder of the statements about the same incident in order to rehabilitate the witnesses).

## II

Appellant's second contention of error is that the trial court abused its discretion in refusing to permit the State's witness, William Schmuff, to be impeached with proof of a prior conviction for malicious destruction of property.

The fact that a witness has been convicted of a crime is admissible to attack the witness's credibility only where the prior conviction was for (1) an infamous crime; (2) a crime involving moral turpitude; or (3) a lesser violation of the law which has some tendency to show that the witness is not to be believed under oath. *State v. Duckett*, 306 Md. 503, 507, 510 A.2d 253 (1986); *Ricketts v. State*, 291 Md. 701, 707, 436 A.2d 906 (1981); *Taylor v. State*, 226 Md. 561, 566, 174 A.2d 573 (1961).

The principle that governs the determination whether a crime may be classified in any one impeaching category is whether the *"crime itself* ... clearly identif[ies] the prior conduct of the witness which tends to show that he is unworthy of belief." *Duckett, supra*, 306 Md. at 508, 510 A.2d 253 (emphasis in original).

For more than a century Maryland has provided by statute that evidence of a witness's prior conviction for an "infamous crime" is admissible to attack the witness's credibility. *See Gorman v. State*, 67 Md.App. 398, 410, 507 A.2d 1160 (1986), and Md.Cts. & Jud.Proc.Code Ann. § 10–905 (1984 Repl. Vol.).

In *Ricketts v. State, supra*, the Court of Appeals elaborated on the term "infamous crime":

The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery, and those other offenses, classified generally as *crimen falsi*, which impressed upon their perpetrator such a moral taint that to permit him to testify in

legal proceedings would injuriously affect the public administration of justice.[2]

291 Md. at 707–08, 436 A.2d 906 (quoting *Garitee v. Bond,* 102 Md. 379, 383, 62 A. 631 (1905)).

In *Ricketts,* the Court noted that the offenses which could properly be said to be crimes of moral turpitude were still undetermined. *Id.* 291 Md. at 707, 436 A.2d 906. While the term is "imprecise," the Court acknowledged it "connoted conduct which was base or vile and contrary to the accepted and customary conduct between men." *Id. See also Dental Examiners v. Lazzell,* 172 Md. 314, 320, 191 A. 240 (1937); *Duckett, supra,* 306 Md. at 507, 510 A.2d 253. The term suggests "such a disregard for social values on the part of the perpetrator that one could reasonably infer that such a person's testimony is suspect." *Ricketts,* 291 Md. at 711, 436 A.2d 906.

Finally, it has been held that to constitute moral turpitude, the conduct involved must be intentional, and not merely negligent or accidental. *Ricketts, supra,* 291 Md. at 712–13, 436 A.2d 906; *Lazzell, supra,* 172 Md. at 322, 191 A. 240.

While crimes which are determined to be infamous are always admissible, the admission into evidence of a witness's prior conviction for non-infamous crimes is left to the sound discretion of the trial court. *Cason v. State,* 66 Md.App. 757, 774, 505 A.2d 919 (1986).

■ A lesser crime, to be admitted for impeachment purposes, must affect an individual's credibility. In exercising its discretion to exclude crimes falling within this category, the court must take into consideration the length of time

---

**2.** *Black's Law Dictionary* 335 (5th Ed.1979) defines *crimen falsi* as follows:

"Term generally refers to crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on witness' propensity to testify truthfully."

since the offense occurred and the nature of the offense. *Duckett, supra,* 306 Md. at 509, 510 A.2d 530; *Cousins v. State,* 230 Md. 2, 4, 185 A.2d 488 (1962).

Appellant contends malicious destruction of property is an impeachable crime, relying on Blackstone's description of the offense as one characterized by "a spirit of wanton cruelty, or black and diabolical revenge ... which ... though only a trespass at common law is now by a multitude of statutes made penal in the highest degree." W. Blackstone, 4 *Commentaries on the Law of England* 243 (1768).

■ While malicious destruction of property was an offense known at common law, it has been a creature of statute in England and the United States for decades. J. Bishop, *Commentaries on the Law of Statutory Crimes* 387–88 (1901); 3 W. Burdick, *The Law of Crime* 135–138 (1946).

Article 27, section 111(a) of the Md.Ann.Code (1982 Repl. Vol. & 1986 Supp.) currently provides that "[a]ny person who shall wilfully and maliciously destroy, injure, deface or molest any real or personal property of another shall be deemed guilty of a misdemeanor." Under subsections (b) and (c), the allowable penalty varies depending on whether the value of the property involved is worth more or less than $300.00. The maximum penalty which is imposable is a fine of $2,500 and/or three years imprisonment.

In *Shell v. State,* 307 Md. 46, 68, 512 A.2d 358 (1986), the Court of Appeals characterized the crime as a specific intent offense, which requires both a deliberate intention to injure the property of another and malice. Mere reckless or wanton disregard of property by the offender will not support a conviction for malicious mischief. *Brooks v. State,* 68 Md.App. 604, 614, 515 A.2d 225 (1986).

We do not believe the offense of malicious destruction of property is an infamous crime. As previously mentioned, the offense is not a felony, but a misdemeanor. It is not among those crimes classified as *crimen falsi,* which, by

their very nature, speak directly to the credibility of the offender. While the offense involves a deliberate and malicious intent to injure another's property, no Maryland decision has ever held that the mere fact a crime involves a specific intent rather than a general intent is sufficient to allow its use for impeachment purposes.

Nor can it be said that malicious destruction of property involves moral turpitude, despite Blackstone's characterization of the crime as "diabolical." Although the offense may involve conduct which is "immoral," immorality and moral turpitude are not synonymous. *Matthews v. State,* 68 Md.App. 282, 300, 511 A.2d 548 (1986). The name of the offense, without more, says little about the conduct for which the person was convicted and the range of offenses and circumstances falling within the crime's ambit vary dramatically. A conviction may be had for the destruction of a wide variety of property whether its value be under $1.00 or in excess of thousands. It may be the product of a well-planned scheme to cause injury, or it may be the rash offspring of a sudden burst of temper.

That which the Court in *Ricketts* said about the offense of indecent exposure is also applicable to the offense of malicious destruction of property:

> [W]hile one person may indeed have shown a moral depravity sufficient to impact upon his credibility, another may have committed a very minor infraction indicative of nothing more than momentary poor judgment. . . .

291 Md. at 710, 436 A.2d 906. No factual background respecting Schmuff's prior conviction was present in the record. We could not say, without more, that the offense indicated the kind of depravity necessary to constitute an offense of moral turpitude.

Finally, we do not believe the offense of malicious destruction is among those lesser violations having "some tendency to show that the person charged is not to be believed under oath." *Cousins v. State, supra,* 230 Md. at

4, 185 A.2d 488 (1962). In *Ricketts,* the Court of Appeals held that "where there is no way to determine whether a crime affects the [witness's] testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment." 291 Md. at 713, 436 A.2d 906. When the crime itself does not indicate "what it was that the [witness] did, we cannot say that his conduct renders his credibility suspect." *Duckett, supra,* 306 Md. at 509, 510 A.2d 253.

The name of the offense—malicious destruction—indicates nothing respecting the likely veracity or mendacity of a witness. To paraphrase the Court in *Duckett,* "[t]here is no basis in logic to indicate that a propensity [to do violence to another's property] amounts to a predilection to lie." If, as the Court held in *Duckett,* 306 Md. at 512, 510 A.2d 253, battery is not an impeachable offense because a willingness to engage in fisticuffs is not probative of veracity, malicious destruction of property is likewise not an impeachable offense because the intentional and malicious breaking of another's chattel in a fit of passion is certainly no more reprehensible than breaking his nose. We hold, therefore, that the court did not err in refusing to permit the witness's prior conviction of malicious destruction of property to be used to impeach him.

We do not view as an impediment to this holding our prior decision in *Gunther v. State,* 4 Md.App. 181, 184, 241 A.2d 907 (1968). In *Gunther* we held that since the admission of prior convictions for the purpose of impeachment is within the discretion of the trial judge, the judge had not committed reversible error in admitting a prior conviction for malicious destruction of property. That decision rested principally on the fact that the appellant was tried by the court and not the jury. *See also Smith v. State,* 6 Md.App. 581, 588–89, 252 A.2d 277 (1969).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.