698 A.2d 1139

Darian Tera HOLMES

v.

STATE of Maryland.

No. 1381, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Aug. 28, 1997.

548

Gina M. Serra, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Regina Hollins Lewis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jack B. Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for Appellee.

Submitted before HOLLANDER and SONNER, JJ., and ROBERT F. FISCHER, Judge (retired), Specially Assigned.

SONNER, Judge.

This is an appeal from a conviction of second degree murder and a sentence of fifty years incarceration. Darian Tera Holmes, appellant, was charged by the Grand Jury for Prince George's County with first degree murder, second degree murder and use of a handgun in the commission of a crime of violence. Holmes made an incriminating statement during interrogation, which he sought to suppress prior to trial. After a hearing, Judge Robert J. Woods denied the motion. Thereafter, a jury in the Circuit Court for Prince George's County acquitted Holmes of first degree murder but failed to

reach a verdict as to the second degree murder and handgun charges. A second jury convicted Holmes of second degree murder and use of a handgun in the commission of a crime of violence. Holmes raises two issues on appeal, which we have rephrased slightly:

I. Did the trial court properly deny Holmes's motion to suppress his incriminating statement?

II. Did the trial court properly admit the written statements of three State witnesses?

We answer both questions in the affirmative and uphold the trial court's conviction.

### *Factual Background*

On June 20, 1995, at approximately 1:55 a.m., Danise Harris and her roommate Ellouise Thompson left their apartment to use the telephone at a nearby gas station. They came upon acquaintances, appellant, Miah Lewis, and Antoine Awkard. Appellant and Harris walked together ahead of the others about fifteen feet. Moments later, Harris lay dead on the pavement. Evidence adduced at trial demonstrated that a single gunshot by a .32 caliber bullet, fired six to nine inches away, caused her death.

The police arrested Holmes at approximately 6:30 p.m. on June 23, 1995, and took him to the Criminal Investigative Division headquarters for interrogation. Detective Anne Spivey informed Holmes that he was being questioned for the murder of Danise Harris. She removed his handcuffs and asked appellant to remove his outer clothing and shoes so they could be examined for evidence. Holmes remained in gym shorts, a tee-shirt, and socks during the interview.

Detective Spivey began speaking with Holmes around 7:00 p.m. She obtained background information learning that he was seventeen years old and had completed the eleventh grade. She read *Miranda* [1] warnings out loud and completed

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

an "Advice of Rights and Waiver Form" with him. She asked Holmes to read a portion of the form out loud to insure that he was able to read and understand his rights. It was her impression that he did understand. He acknowledged on the form that he understood his rights and that he wanted to make a statement without a lawyer present. At that time, Holmes denied involvement in Harris's death. Detective Spivey stopped questioning just before 8:00 p.m.

An hour later, a second detective, Dwight DeLoatch, entered the interrogation room and, upon Holmes's request, escorted him to the bathroom. When they returned, Detective Spivey resumed questioning, which lasted until about 11:00 p.m. The detectives initiated two more questioning sessions before midnight.

Holmes's mother waited at the police station throughout the interrogation. Detective Spivey spoke with her but did not let her speak with her son. Spivey did tell her that her son would need an attorney.

At approximately 1:00 a.m., Detective DeLoatch and Detective Paul Owens obtained statements from Lewis and Awkard inculpating Holmes in the shooting. They told Holmes about the incriminating statements and, at 1:52 a.m., Holmes agreed to give a statement. He wrote that he shot Harris because she threatened to tell police that he was selling drugs. He finished the statement at 3:15 a.m. and, for the first time, requested an attorney.

Prior to trial, Holmes moved to suppress his statement on the grounds that he made it involuntarily. He noted as factors that he had asked for a lawyer; that his mother had not been permitted to talk to him; that he was seventeen years old; that three detectives questioned him; that the detectives removed his outer clothing; that they denied him food; and that he initially denied the crime. The trial judge denied the motion to suppress, finding that Holmes was "fully advised of his rights, he knew them, he understood them, [and] he fully waived them...." The trial judge found that the detectives did not physically assault, threaten, or "deprive

him of anything in order to get him inferentially in a weaker position." He further found that the "defendant never asserted his right to have a lawyer present during that interrogation...." Accordingly, the judge was persuaded that the statements were "free and voluntary."

A jury convicted him of second degree murder and use of a handgun in the commission of a crime of violence. The trial judge sentenced him to thirty years incarceration for the murder conviction, and a consecutive twenty-year sentence for the handgun conviction.

We include additional facts concerning the written statements of Thompson, Lewis, and Awkard as they become pertinent to the legal analysis.

### *Legal Analysis*

### I. Motion to Suppress

■ In reviewing a motion to suppress, we review only the record of the suppression hearing, *Matthews v. State*, 106 Md.App. 725, 732, 666 A.2d 912 (1995), *cert. denied*, 341 Md. 648, 672 A.2d 623 (1996) (citations omitted), and we review the facts most favorably to the State as the prevailing party on the motion. *Id.* While we accept the trial court's findings of facts unless clearly erroneous, we make our own independent constitutional appraisal as to the effect of those facts. *Id.*

■ The Fifth Amendment right against self-incrimination protects defendants from having their involuntary statements admitted into evidence. *Lodowski v. State*, 302 Md. 691, 716, 490 A.2d 1228 (1985) (*Lodowski I* ). *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), set out prophylactic rules for safeguarding the Fifth Amendment guarantee. It prescribed that law enforcement officials must advise defendants, subject to custodial interrogation, of their right to remain silent and have an attorney present if defendants' responses are later to be admitted into evidence. *Lodowski*, 302 Md. at 716, 490 A.2d 1228. In the present case, Holmes concedes that detective Spivey gave proper *Miranda* warn-

ings, but challenges the adequacy of his waiver, claiming that he did not understand his rights and did not voluntarily waive them.

Defendants may waive their *Miranda* rights, provided, under the totality of the circumstances, they act voluntarily, knowingly, and intelligently. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. The court must consider defendant's age, intelligence, education, experience, and mental capacity, as well as the length of interrogation, the tactics of interrogation, and whether law enforcement threatened or induced the suspect to confess. *See Lodowski v. State,* 307 Md. 233, 254–55, 513 A.2d 299 (1986) (*Lodowski II* ). We apply the same totality of the circumstances test to juvenile waivers. *McIntyre v. State,* 309 Md. 607, 615, 526 A.2d 30 (1987) (quoting *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)). Tender age and inexperience, however, require law enforcement to take great care that juvenile statements are voluntary. *McIntyre,* 309 Md. at 617, 526 A.2d 30. The State must prove valid waiver by a preponderance of the evidence. *Id.* at 615, 526 A.2d 30 (citations omitted).

Considering all the facts and circumstances of the present case, we conclude that the trial judge correctly admitted Holmes's pre-trial statement. Holmes was seventeen years old and had completed the eleventh grade, indicating a normal progression in school. He read a portion of the waiver out loud and there was no indication that he did not understand his rights. Nor was the length of the interrogation excessive. Although Holmes was in custody for seven hours prior to giving a statement, he was interrogated for only three hours, with the longest period of uninterrupted questioning lasting only about an hour.

As to the interrogation techniques, the trial court found no evidence of threat or inducement. Detective Spivey offered Holmes food and drink, which he declined, and Holmes used the bathroom upon request. Holmes makes much of the fact that his mother was not permitted to sit with him during the interrogation. The absence of a parent or guardian, however,

does not, in itself, render a juvenile statement involuntary. *Jones v. State,* 311 Md. 398, 407–08, 535 A.2d. 471 (1988). Holmes did not ask to speak with his mother, nor did he produce evidence showing that his mother would have assisted in contemplating his legal rights. *See McIntyre,* 309 Md. at 626, 526 A.2d 30. Additionally, we do not infer improper interrogation tactics from the fact that he confessed only after the detectives informed him that his friends implicated him in the murder. Arguably, the existence of incriminating evidence, not overbearing police tactics, induced Holmes to speak at that time.

Accordingly, our independent constitutional assessment of the totality of circumstances of this case convinces us that Holmes voluntarily waived his *Miranda* rights and voluntarily confessed to the crime. We affirm the trial court's denial of appellant's motion to suppress.

## II. State's Witnesses' Statements

Appellant contends that the trial court erred in admitting into evidence the written statements of Ellouise Thompson, Miah Lewis, and Antoine Awkard. We consider each statement in turn.

### A. Thompson

Shortly after the shooting, Thompson gave a written statement documenting that she did not see who shot Harris. Two days later, on June 22, 1995, however, she met with Detective Spivey and stated that Holmes shot Harris.

At trial, Thompson testified consistently with her June 22 statement. She explained that she did not name Holmes as the shooter after the murder because she feared him. She contacted police after Holmes visited her home twice following the shooting, making her feel threatened. On cross-examination, defense counsel submitted Thompson's first statement into evidence. He also questioned her about her second statement. On redirect, over defense objection, the State submitted Thompson's second statement. The trial court

stated: "I will let it come in because we received the earlier statement. I think the jury has the right to look at both."

■ Holmes argues that the trial court improperly admitted Thompson's second statement as a prior consistent statement. He contends that the statement impermissibly bolstered Thompson's credibility by repeating her testimony. We note at the outset that the trial judge determines the admissibility of prior statements under Maryland Rule of Evidence 5–104(a). We will not disturb the trial court's evidentiary ruling unless it is a clear abuse of discretion. *Jeffries v. State*, 113 Md.App. 322, 339, 688 A.2d 16 (1997).

■ Maryland Rule of Evidence 5–802.1 provides:

The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

. . . .

(b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive.

Only statements that *logically rebut* the alleged impeachment are admissible. *Cole v. State*, 83 Md.App. 279, 299, 574 A.2d 326 (1990) (quoting Lynn McLain, *Maryland Evidence*, § 613.2 at 169–70 (1987)). At common law, only prior consistent statements made before the alleged fabrication were held to be rehabilitative. *See Cole*, 83 Md.App. at 300, 574 A.2d 326 (quoting *Boone v. State*, 33 Md.App. 1, 6, 363 A.2d 550 (1976)). The Supreme Court recently adopted the common law rule in interpreting Federal Rule of Evidence, 801(d)(1)(C), the corollary of Rule 5–802.1. *Tome v. U.S.*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995).

■ We decline to follow the federal lead. Maryland's divergence from the precise language of the federal rule regarding prior consistent statements is instructive. Whereas

Federal Rule of Evidence 801(d)(1)(C) refers to *"recent* fabrication" (emphasis added), Maryland refers only to "fabrication." The omission of "recent" signifies a more flexible approach to the admission of prior consistent statements, not to be limited by the timing of the statement. Lynn McLain, *Maryland Rules of Evidence,* § 2.801.1(3)(1994). *But see* Allan Hornstein, *The Maryland Rules of Evidence,* 54 Md. L.Rev. 1032, 1068 (1995). Consistent statements made prior to the alleged fabrication surely rebut the allegation of fabrication, but "there may [also] be some rebuttal value in a statement made after some motive existed, but before it became strong." *Maryland Rules of Evidence, supra,* § 2.802.1(4)(d). Likewise, "[a] postmotive statement is relevant to rebut ... a charge of recent fabrication based on improper motive ... when the speaker made the prior statement while affected by a far more powerful motive to tell the truth." *Tome,* 513 U.S. at 172, 115 S.Ct. at 708 (Breyer, J., dissenting).

 In the present case, by admitting Thompson's prior inconsistent statement, defense counsel impeached Thompson's trial testimony. *See Cole,* 83 Md.App. at 298, 574 A.2d 326. The State had the right to rehabilitate her, and met the task by submitting Thompson's prior consistent statement. True, the consistent statement did not precede the inconsistent statement, but a trial court could properly find that it had "rebuttal value" nonetheless.

### B. Lewis

Following the shooting, Lewis made a statement to police, which included a narrative and a question and answer portion. In the narrative section, he wrote: Holmes "started talkin [sic] to the lady. They started walkin [sic]. Then [Holmes] shoot her. And I run." In the question and answer portion, Lewis stated that he heard a gunshot and saw Harris lying on the ground. At trial, during cross-examination, defense counsel questioned Lewis about the discrepancy between the narrative and question and answer portions regarding whether Lewis saw Holmes shoot Harris. Lewis reiterated that he did

not see Holmes shoot Harris, but heard a gunshot and saw Harris on the ground. On redirect, over defense objection, the State submitted Lewis's statement into evidence. The trial judge stated, "I think you laid the foundation for it to be received."

Appellant claims that the trial court improperly admitted Lewis's written statement as a prior consistent statement. The State argues the trial court ruled properly under the "completeness" doctrine. That doctrine, codified in Maryland Rules of Evidence 5–106, states that when a party introduces part of a writing, opposing counsel may introduce other parts of the same writing that shed light on the first piece introduced. *Paschall v. State*, 71 Md.App. 234, 239, 524 A.2d 1239 (1987) (quoting *Newman v. State*, 65 Md.App. 85, 95, 499 A.2d 492 (1985)). To be admissible, the portion submitted must explain the part already in evidence or correct a misleading impression left by the evidence previously introduced. *Paschall*, 71 Md.App. at 240, 524 A.2d 1239.

The State maintains that the jury was entitled to see Lewis's entire statement, not merely hear the excerpts chosen by defense counsel. Those excerpts, however, in conjunction with the questioning on redirect, fleshed out the important parts of Lewis's statement—his contradictory responses as to whether he saw or merely heard the gunshot. In the remaining part of the statement, Lewis identified the people at the scene of the crime and described the gun that he saw Holmes carrying—information developed through trial testimony and which hardly explained or shed light on Lewis's contradictory responses.

Although the trial court improperly admitted Lewis's statement, we find the error harmless.

The essence of [the harmless error] test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded.

*Trusty v. State,* 308 Md. 658, 668, 521 A.2d 749 (1987) (quoting *Ross v. State,* 276 Md. 664, 674, 350 A.2d 680 (1976)). Lewis had already testified regarding the contents of his statement when the statement was introduced; the written statement did not add anything new to the jury's panoply of facts. As such, we are convinced that the cumulative effect of the properly admitted evidence outweighed, beyond a reasonable doubt, the prejudicial effect of Lewis's written statement. There is no reasonable possibility that the jury's verdict would have been different if the statement had been excluded.

## C. Awkard

■ Awkard gave a statement to police inculpating Holmes, and repeated his story at trial. On cross-examination, defense counsel asked Awkard whether the police threatened him on the night they questioned him about Harris's death. The State objected and moved to admit Awkard's statement into evidence. Defense counsel did not object to the admission, and proceeded to question Awkard in detail regarding the statement.

Appellant claims the trial court improperly admitted the statement as a prior consistent statement. Appellant did not preserve the issue for review, however, and we cannot reach the merits of the claim. Rule 4–323 of the Maryland Rules states: "An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived." Md. Rules, 4–323(a).

We find that Holmes voluntarily waived his *Miranda* rights and confessed to the crime. We also find that the trial court correctly admitted the written statements of Thompson and Awkard and harmlessly admitted Lewis's statement. Consequently, we affirm.

**JUDGEMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**