712 A.2d 554

**Darian Tera HOLMES**

v.

**STATE of Maryland.**

**No. 95, Sept. Term, 1997.**

Court of Appeals of Maryland.

July 2, 1998.

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Regina Hollins Lewis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CHASANOW, Judge.

In the instant case, Darian Tera Holmes (Petitioner) asks this Court to determine whether a witness's prior consistent statement is admissible under Maryland Rule 5–802.1(b) to rebut a charge of fabrication where the statement was made after a motive to fabricate arose. In our view, the issue before this Court is whether the Court of Special Appeals erred in concluding that the trial court properly admitted a witness's prior consistent statement. For the reasons set forth below, we hold that the Court of Special Appeals did not err and therefore affirm its judgment, but for different reasons and based on a rule of evidence not cited by the parties.

## I.

In the early morning hours of June 20, 1995, Danise Harris and her roommate Ellouise Thompson left their apartment to use a nearby telephone. Shortly thereafter, they ran into acquaintances, Petitioner, Antoine Awkard, and Miah Lewis. Petitioner and Harris began walking together ahead of the group, while Thompson stayed behind to talk with the remaining acquaintances. Moments later, a shot was fired, and Harris lay dead on the pavement. At trial, evidence was presented that Harris died from a single gunshot wound from a .32 caliber bullet that was fired from approximately six to nine inches away.

Following the shooting, Thompson gave a written statement to police indicating that she did not see who shot Harris. Two days later, on June 22, 1995, Thompson gave a second state-

ment to police, this time indicating that Petitioner shot Harris. At trial, Thompson testified consistently with her second statement to police. During direct examination, Thompson explained that, although she told one of her sons what Petitioner had done, she initially was reluctant to give any statement to police because Petitioner knew that she had witnessed the murder and she was frightened for her safety. She also testified that Petitioner visited her the day after the murder making her feel threatened. The next day, Thompson told police that Petitioner murdered the victim. On cross-examination, defense counsel impeached Thompson with her prior inconsistent statement that she did not see who shot Harris and submitted this statement into evidence. On redirect, the State asked Thompson to identify her second statement to police that it was Petitioner who shot Harris and then moved for its admission. Over defense counsel's objection, the trial court admitted the statement, stating: "I will let it come in because we received the earlier statement. I think the jury has the right to look at both." Neither the State nor defense counsel argued further regarding the admissibility of Thompson's second statement. During closing arguments, defense counsel further questioned the credibility of Thompson's statement implicating Petitioner.

Petitioner was convicted by a jury of second-degree murder and use of a handgun in the commission of a felony. Petitioner was sentenced to thirty years imprisonment for second-degree murder and twenty years imprisonment for the use of a handgun to be served consecutively. On appeal, the Court of Special Appeals in a reported opinion affirmed Petitioner's convictions. *Holmes v. State*, 116 Md.App. 546, 698 A.2d 1139 (1997). This Court granted a writ of certiorari on December 15, 1997 to review whether the intermediate appellate court erred in concluding that the trial court properly admitted Thompson's prior consistent statement.

II.

As a general rule, prior out-of-court statements made by a witness that are consistent with the witness's trial

testimony are not admissible to bolster the credibility of a witness. The general rule has an exception where a witness's credibility is attacked by an implication of fabrication or improper influence or motive; then, the witness's prior consistent statements are admissible if made before the alleged fabrication or improper influence or motive existed. *See City Pass. Ry. Co. v. Knee*, 83 Md. 77, 79, 34 A. 252, 253 (1896) (noting that where a witness has been impeached by "evidence showing that he has testified under corrupt motives, or has fabricated his testimony to meet the exigencies of the case, the fact that he uttered the same statement, shortly after the transaction, and before the motive to fabricate existed, tends to support not only his integrity, but also the accuracy of his recollection"). The rationale behind the common-law, "premotive" rule was that if a witness has been attacked by a charge of "bias, interest, corrupt influence, contrivance to falsify, or want of capacity to observe or remember, the applicable principle is that the prior consistent statement has no relevancy to refute the charge unless the consistent statement was made *before* the source of the bias, interest, influence or incapacity originated." 1 McCORMICK ON EVIDENCE § 47, at 177 (John W. Strong ed., 4th ed.1992). At common law, a prior consistent statement was admissible only to rehabilitate the witness's credibility and not as substantive evidence. *Collins v. State*, 318 Md. 269, 285, 568 A.2d 1, 9, *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990).

The Maryland rules of evidence have been in effect since July 1, 1994. Maryland Rule 5–802.1 is the counterpart to Federal Rule of Evidence 801(d)(1).[1] Maryland Rule 5–802.1 provides in pertinent part:

---

1. Federal Rule of Evidence 801(d)(1) provides, in pertinent part, that "[a] statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive...." Prior consistent statements within this rule are treated as nonhearsay, and such statements are admissible as substantive evidence. Prior consistent statements under Maryland Rule 5–802.1(b), however, fall

"The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

\* \* \*

(b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive."

Subsection (b) of the Maryland rule is derived from FED. R.EVID. 801(d)(1)(B), and both rules are silent as to whether the consistent statement must have been made prior to the time of the alleged fabrication or improper influence or motive. With regard to the federal rule, the United States Supreme Court has addressed the issue of whether a witness's "out-of-court consistent statements made after the alleged fabrication, or after the alleged improper influence or motive arose, are admissible." *Tome v. United States,* 513 U.S. 150, 152, 115 S.Ct. 696, 699, 130 L.Ed.2d 574, 579 (1995). Limiting its holding to the "requirements for admission under Rule 801(d)(1)(B)," the Supreme Court held that FED.R.EVID. 801(d)(1)(B) embodies the common-law rule requiring a prior consistent statement, introduced "to rebut a charge of recent fabrication or improper influence or motive" to have been made before the alleged fabrication or improper influence or motive came into existence. *Tome,* 513 U.S. at 167, 115 S.Ct. at 705, 130 L.Ed.2d at 588.

In *Tome,* the petitioner was charged in a one-count indictment with sexually abusing his four-year-old daughter. The government's theory was that the crime was committed while the child was in Tome's custody and discovered when the child was spending the summer with her mother. The defense asserted that the allegations were fabricated in order to prevent the return of the child to Tome who had primary

---

within an exception to the hearsay rule, but like the federal rule such statements are admissible as substantive evidence.

custody. On the first day of trial, the child, then six years old, testified as the government's first witness and appeared to have no difficulty answering questions during her direct examination or general background questions during cross-examination. On the second day of her cross-examination, however, the child hesitated in answering questions regarding the alleged abuse and appeared to lose concentration at times. After the child's testimony, the government called six witnesses who testified regarding prior statements made by the child describing the alleged abuse; these statements were offered by the government and admitted into evidence by the court pursuant to FED.R.EVID. 801(d)(1)(B). *Tome*, 513 U.S. at 152–54, 115 S.Ct. at 699–700, 130 L.Ed.2d at 579–80.

Examining the language of the federal rule, the Supreme Court reasoned that FED.R.EVID. 801(d)(1)(B) limited the admissibility of prior consistent statements by focusing on "rebutting charges of recent fabrication, improper influence and motive to the exclusion of other forms of impeachment." *Tome*, 513 U.S. at 160, 115 S.Ct. at 702, 130 L.Ed.2d at 584. The Supreme Court explained:

> "This limitation is instructive, not only to establish the preconditions of admissibility but also to reinforce the significance of the requirement that the consistent statements must have been made before the alleged influence, or motive to fabricate arose. That is to say, the forms of impeachment within the Rule's coverage are the ones in which the temporal requirement makes the most sense. Impeachment by charging that the testimony is a recent fabrication or results from an improper influence or motive is, as a general matter, capable of direct and forceful refutation through the introduction of out-of-court consistent statements that predate the alleged fabrication, influence or motive. A consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive. By contrast, prior consistent statements carry little rebuttal force when most other types of impeachment are involved."

*Tome,* 513 U.S. at 158, 115 S.Ct. at 701, 130 L.Ed.2d at 582–83. Thus, under FED.R.EVID. 801(d)(1)(B), a prior consistent statement "may not be admitted to counter all forms of impeachment or to bolster the witness merely because [he or] she has been discredited." *Tome,* 513 U.S. at 157, 115 S.Ct. at 701, 130 L.Ed.2d at 582. Moreover, the Supreme Court reasoned, FED.R.EVID. 801(d)(1)(B) employs "somewhat peculiar" language similar to the language contained in the common-law cases. *Tome,* 513 U.S. at 159, 115 S.Ct. at 702, 130 L.Ed.2d at 583.

In reaching its decision, the Supreme Court rejected the government's argument that the common-law rule is inconsistent with the federal rules liberal approach to relevancy, noting that "[h]earsay evidence is often relevant" and that "[r]elevance is not the sole criterion of admissibility." *Tome,* 513 U.S. at 163, 115 S.Ct. at 704, 130 L.Ed.2d at 586. A case-by-case balancing approach was also rejected by the Supreme Court because: "It involves considerable judicial discretion; it reduces predictability; and it enhances the difficulties of trial preparation because parties will have difficulty knowing in advance whether or not particular out-of-court statements will be admitted." *Tome,* 513 U.S. at 165, 115 S.Ct. at 704–5, 130 L.Ed.2d at 587. The Supreme Court further expressed its fear that the emphasis at trial could shift from the in-court statements to the out-of-court statements if FED.R.EVID. 801(d)(1)(B) was not limited to premotive statements. *Tome,* 513 U.S. at 165, 115 S.Ct. at 705, 130 L.Ed.2d at 587. Although the Supreme Court acknowledged that there may be instances where out-of-court statements made after the alleged fabrication have some probative force, the Court noted that such statements rebut the alleged fabrication in a "less direct and forceful" manner. *Tome,* 513 U.S. at 158, 115 S.Ct. at 701, 130 L.Ed.2d at 583.

Turning to the instant case, the Court of Special Appeals declined to follow the *Tome* limitation on the use of prior consistent statements under FED.R.EVID. 801(d)(1)(B) noting that, while the federal rule includes the phrase "recent fabrication," the Maryland rule omits the word "recent." *Holmes,*

116 Md.App. at 555–56, 698 A.2d at 1143. Concluding that the omission "signifies a more flexible approach to the admission of prior consistent statements, not to be limited by the timing of the statement," the intermediate appellate court noted that:

"Consistent statements made prior to the alleged fabrication surely rebut the allegation of fabrication, but 'there may [also] be some rebuttal value in a statement made after some motive existed, but before it became strong.' Likewise, '[a] postmotive statement is relevant to rebut ... a charge of recent fabrication based on improper motive ... when the speaker made the prior statement while affected by a far more powerful motive to tell the truth.'" (Citations omitted).

*Holmes,* 116 Md.App. at 556, 698 A.2d at 1143–44. Based on its interpretation of Md. Rule 5–802.1(b), the Court of Special Appeals rejected Petitioner's argument that Thompson's second "statement impermissibly bolstered Thompson's credibility by repeating her testimony" and held that the trial court properly admitted Thompson's statement. *Holmes,* 116 Md. App. at 555–56, 698 A.2d at 1143–44. We affirm the judgment of the Court of Special Appeals but on other grounds.

Petitioner argues that Maryland should continue to adhere to the common-law rule as the Supreme Court did in *Tome* and the majority of other jurisdictions have done. Noting that "post-motive to fabricate statements carry little probative weight," Petitioner asserts that the common-law rule will permit the "admission of statements which are a 'square rebuttal' of the charged fabrication, *Tome,* 513 U.S. at 158, [115 S.Ct. at 701, 130 L.Ed.2d at 583] while excluding statements which carry little, if any, probative force to rebut [the] charged fabrication." The State counters that the plain language of Md. Rule 5–802.1(b) permits the admission of a witness's prior consistent statement to rebut a charge of fabrication because the rule does not impose a requirement as to the timing of the fabrication or the prior consistent statement. The State contends that the omission of the word "recent" from Md. Rule 5–802.1(b) indicates an intent to depart from the federal requirement that the consistent state-

ment precede the fabrication. Therefore, the State concludes, "[a]ll that is required is that the statement be relevant to rebut a charge of fabrication; if the relevancy requirement is met, the statement may be admitted regardless of its timing." We agree with Petitioner that Md. Rule 5–802.1(b) embodies the common-law, premotive rule, and we give our rule the same interpretation the Supreme Court gave the federal rule in *Tome;* however, Thompson's prior consistent statement was properly admitted under a different Maryland rule as we shall explain in Part IV.

 We recently reiterated the longstanding principles of construction that are applied with regard to the Maryland rules.

"In construing a rule, we apply principles of interpretation similar to those used to construe a statute. First, we must examine the 'words of the rule, giving them their ordinary and natural meaning.' Where the language of the rule is clear and unambiguous, our analysis ends."

*State v. Harrell,* 348 Md. 69, 79–80, 702 A.2d 723, 728 (1997) (citations omitted)(quoting *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994)). Where the language of the rule is ambiguous, this Court will examine the history of the rule to aid in determining the "reasonable intendment of the language used in the light of the purpose to be effectuated." *Long v. State,* 343 Md. 662, 668, 684 A.2d 445, 448 (1996). "The ultimate goal of this Court is 'to give the rule a reasonable interpretation in tune with logic and common sense.'" *Harrell,* 348 Md. at 80, 702 A.2d at 728 (quoting *In re Victor B.,* 336 Md. at 94, 646 A.2d at 1016). With this goal in mind, Maryland rules "dealing with the same subject matter will be construed so as to harmonize with each other and not produce an unreasonable result." *Johnson v. State,* 274 Md. 29, 41, 333 A.2d 37, 43 (1975). Furthermore, absent a clear indication to the contrary, we shall assume that the rule "was not intended to amend, nullify, or supersede the common law." *See Richwind v. Brunson,* 335 Md. 661, 672, 645 A.2d 1147, 1152 (1994).

■ As we indicated earlier, the language of Md. Rule 5–802.1(b) is silent as to whether the rule requires that the consistent statement precede the alleged fabrication or improper influence or motive. Although the rule omits the word "recent," as used in the federal rule, this omission does not signify an intent to depart from the federal rule or our common-law rule. In fact, Md. Rule 5–802.1(b) "takes no position on the timing of the prior consistent statement vis a vis the time when the motive to falsify arises." Reporter's Note to the Standing Committee on Rules of Practice and Procedure (Rules Committee), 125th Report, regarding Rule 5–802.1, July 1993, at 188. The history of the rule indicates that the federal courts interpreted the use of the word "recent" to require the consistent statement to have been made after a motive to fabricate came into existence and not to mean its dictionary definition of "having lately come into existence" or "just made or formed." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, at 1894 (Philip B. Gove ed., 1986). Because the motive could be old under such an interpretation, the Rules Committee believed that the use of "recent" was incorrect and thus omitted "recent" in drafting the Maryland rule.

Furthermore, the rule's history indicates that it was intended to permit the admission of those prior consistent statements "which would *logically rebut* the impeachment undertaken, whether by an implied or express charge of fabrication or of bias or improper motive." Reporter's Note to the Rules Committee, 125th Report, regarding Rule 5–802.1, July 1993, at 188 (emphasis added). The Rules Committee noted that the admissibility of a prior consistent statement is determined by its relevance and that, as a general rule, "only consistent statements made before a motive to fabricate existed will be relevant to rebut impeachment by the showing of such a motive." *Id.* As the Supreme Court explained in *Tome,* "[a] consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive." *Tome,* 513 U.S. at 158, 115 S.Ct. at 701, 130 L.Ed.2d at 582–83. Thus, "the forms of impeach-

ment within the [r]ule's coverage are the ones in which the temporal requirement makes the most sense." *Id.* Although the Rules Committee acknowledged the possibility that there may be rebuttal value in a consistent statement made sometime after a motive arose but before it became strong, Reporter's Note to the Rules Committee, 125th Report, regarding Rule 5–802.1, July 1993, at 188, such a statement rebuts the "charged fabrication in a less direct and forceful way." *Tome,* 513 U.S. at 158, 115 S.Ct. at 701, 130 L.Ed.2d at 583. Thus, we conclude that, in order to be admissible under Md. Rule 5–802.1(b), a prior consistent statement must have been made before the alleged fabrication or improper influence or motive arose.

### III.

Turning to whether Thompson's prior consistent statement falls within the requirements of Md. Rule 5–802.1(b), we conclude that the rule and its premotive requirement do not apply in the instant case.

Like its federal counterpart, Md. Rule 5–802.1(b) does not permit all prior consistent statements to be admitted as substantive evidence. The admissibility of a prior consistent statement under Md. Rule 5–802.1(b) is limited to those statements "offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive." Unlike *Tome,* however, in which the child's prior consistent statements were offered by the government pursuant to FED.R.EVID. 801(d)(1)(B), there is no indication that the State in this case offered Thompson's consistent statement to rebut a charge of fabrication or improper influence or motive, pursuant to Md. Rule 5–802.1(b). After the cross-examination of Thompson, the State asked Thompson to identify her July 22nd statement to police and then moved for its admission. Over defense counsel's objection, the trial court admitted Thompson's consistent statement into evidence because during cross-examination the court had previously admitted Thompson's inconsistent statement to police. Thompson's prior consistent statement thus was not offered to rebut a motive to fabricate; it was offered to rebut Thompson's prior inconsis-

tent statement. Thus, Md. Rule 5–802.1(b) does not apply in the instant case.

## IV.

Although Md. Rule 5–802.1(b) does not provide a basis for admitting Thompson's prior consistent statement, the Court of Special Appeals was correct in concluding that the trial court properly admitted Thompson's consistent statement because, as we shall explain, Thompson's consistent statement was admissible for the limited purpose of rehabilitation under a different Maryland rule.

Since *Tome*, many commentators have discussed its effect on the admissibility of prior consistent statements for rehabilitative purposes other than those set forth in FED.R.EVID. 801(d)(1)(B). *See, e.g.,* 3 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 333, at 67–68 (2d ed.1994, 1997 Supp.); Frank W. Bullock, Jr. & Steven Gardner, *Prior Consistent Statements and the Premotive Rule*, 24 FLA. ST. U.L.REV. 509, 539–42 (1997). A number of federal courts, prior to *Tome*, held that a prior consistent statement may be admissible to rehabilitate a witness's credibility. *See, e.g., Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 730 (6th Cir.1994)(noting that the trial court's discretion to admit prior consistent statements for rehabilitative purposes is not limited by FED.R.EVID. 801(d)(1)(B) and that such statements are admissible for rehabilitative purposes as long as they are relevant); *U.S. v. Castillo*, 14 F.3d 802, 806 (2d Cir.1994)(noting that the standard for admitting a prior consistent statement for rehabilitative purposes is "less onerous than the standard used to determine whether testimony qualifies as nonhearsay" under FED.R.EVID. 801(d)(1)(B) and that "the inquiry is 'whether the particular consistent statement . . . has some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony' ")(quoting *United States v. Pierre*, 781 F.2d 329, 331 (2d Cir.1986)), *cert. denied,* 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994)). We believe that *Tome* left open the question of whether a prior consistent statement may

be admissible for other rehabilitating purposes. *See Tome,* 513 U.S. at 167, 115 S.Ct. at 705, 130 L.Ed.2d at 588 (noting that its holding was limited to the requirements for admission under FED.R.EVID. 801(d)(1)(B)). Our decision in the instant case, however, is not governed by *Tome* as the Maryland rules expressly provide for the rehabilitative use of prior consistent statements.

 The trial judge did not err in admitting the prior consistent statement in this case because Maryland Rule 5–802.1(b) is not the sole basis for admitting prior consistent statements in our courts. Maryland Rule 5–616(c) [2] is directly on point and governs the rehabilitation of a witness whose credibility has been attacked, providing:

"A witness whose credibility has been attacked may be rehabilitated by:

(1) Permitting the witness to deny or explain impeaching facts . . . ;

(2) Except as provided by statute, *evidence of the witness's prior statements that are consistent with the witness's present testimony, when their having been made detracts from the impeachment;*

(3) Evidence through other witnesses of the impeached witness's character for truthfulness, as provided in Rule 5–608(a); or

(4) Other evidence that the court finds relevant for the purpose of rehabilitation." [3] (Emphasis added).

---

**2.** We note that Md. Rule 5–616(c) has no federal counterpart.

**3.** The Rules Committee Note indicates that Md. Rule 5–616 is "intended to illustrate the most frequently used methods of impeachment or rehabilitation. It is not intended to be exhaustive or to foreclose other legitimate methods." Furthermore, as the Rules Committee stated, "[t]he proposed Rule provides, as do the better-reasoned Maryland cases, that a prior consistent statement will be admissible to rehabilitate only if the making of the statement would rebut logically the impeachment." Reporter's Note submitted to the Court of Appeals regarding Rule 5–616, 125th Report of the Court of Appeals Standing Committee on Rules of Practice and Procedure, July 1993, at 86.

In particular, subsection two expressly addresses the admissibility of a witness's prior consistent statements for rehabilitative purposes after the witness's credibility has been attacked. Under Md. Rule 5–616(c)(2), a prior consistent statement is admissible to rehabilitate a witness as long as the fact that the witness has made a consistent statement detracts from the impeachment. Prior consistent statements used for rehabilitation of a witness whose credibility is attacked are relevant not for their truth since they are repetitions of the witness's trial testimony. They are relevant because the circumstances under which they are made rebut an attack on the witness's credibility. Thus, such statements by definition are not offered as hearsay and logically do not have to meet the same requirements as hearsay statements falling within an exception to the hearsay rule, *e.g.*, Md. Rule 5–802.1(b). We therefore conclude that a relevant consistent statement admitted solely for the purpose of rehabilitation is not required to meet the stringent premotive requirement of Md. Rule 5–802.1(b).

Turning to the circumstances of this case, the fact that Thompson made a consistent statement must be relevant to diminish the impeachment of Thompson in order for her consistent statement to be admissible under Md. Rule 5–616(c)(2). At trial, Thompson explained on direct examination that she initially was reluctant to give any statement to police because Petitioner knew that she had witnessed the murder and she was frightened for her safety. Although Thompson told one of her sons what Petitioner had done, Thompson's first statement to the police indicated that she did not see who committed the murder. Thompson also testified that Petitioner visited her the day after the murder and that the next day she told the police that Petitioner murdered the victim. On cross-examination, defense counsel impeached Thompson with her prior inconsistent statement that she did not see who shot Harris, and during closing arguments, he further questioned the credibility of Thompson's statement implicating Petitioner.

The Court of Special Appeals indicated that defense counsel opened the door when he impeached Thompson:

"[B]y admitting Thompson's prior inconsistent statement, defense counsel impeached Thompson's trial testimony. The State had the right to rehabilitate her, and met the task by submitting Thompson's prior consistent statement. True, the consistent statement did not precede the inconsistent statement, but a trial court could properly find that it had 'rebuttal value' nonetheless." (Citations omitted).

*Holmes,* 116 Md.App. at 556, 698 A.2d at 1144. Although we do not agree with the intermediate appellate court's analysis of *Tome* as it relates to Md. Rule 5–802.1, we agree that the State had a right to rehabilitate Thompson with her prior consistent statement. Thompson's consistent statement detracted from the impeachment by rebutting her initial inconsistent statement to police that she did not see who shot Harris. It also put in perspective that her inconsistent statement was made because she was frightened of what Petitioner would do to her. Thompson's consistent statement therefore detracted from the impeachment by Thompson's inconsistent statement that was elicited by defense counsel and was admissible for rehabilitative purposes under Md. Rule 5–616(c)(2).

The result in this case is consistent with our decision in *Collins, supra,* rendered prior to the adoption of the Maryland rules. In *Collins,* the petitioner was convicted of, *inter alia,* first-degree murder and sentenced to death. 318 Md. at 277, 568 A.2d at 4–5. Over the course of the murder investigation, an accomplice to the murder, Tony Michie, made several statements to the police. *Collins,* 318 Md. at 276, 568 A.2d at 4. Initially, Michie told the police that he would speak to them after he consulted his attorney, but Michie did not mention Collins's involvement in the murder. *Id.* Michie's subsequent statements to the police implicated Collins as the triggerman. *Id.* At trial, evidence was presented that, after Michie became aware that the police wanted to question him, Michie and Rodney Bennett agreed to fabricate a story regarding Michie's role in the murder. *Collins,* 318 Md. at 285, 568 A.2d at 8. Defense counsel impeached Michie's testimony with the fact that his first statement to the police did not mention Collins as his accomplice. *Collins,* 318 Md. at 285–86,

568 A.2d at 8–9. The trial court later allowed Bennett to testify as to Michie's prior statements regarding the murder. *Collins,* 318 Md. at 285, 568 A.2d at 8. This Court held that Michie's statements to Bennett were admissible as prior consistent statements in order to rehabilitate Michie's testimony regarding his initial statement to the police, even though the statement was made after the alleged fabrication, because Bennett's "testimony tended to corroborate the fact that Michie participated with Collins in the events leading to the homicide." *Collins,* 318 Md. at 285, 568 A.2d at 9.

Finally, we note that defense counsel did not request, and the trial court did not give, a limiting instruction with regard to Thompson's consistent statement. Counsel for Petitioner at oral argument contended that the State is required to inform the defense whether the State is seeking admission of a prior consistent statement for substantive or rehabilitative purposes. We disagree. The State is not required to assert the purpose for which it is seeking admission of a prior consistent statement unless asked by the court. Petitioner further posits that a prior consistent statement is admissible as substantive evidence only if it is admissible under Md. Rule 5–802.1(b) and since Thompson's statement was not admissible under that rule Petitioner was entitled to a limiting instruction that Thompson's prior consistent statement was admissible only to rehabilitate her testimony, and not as substantive evidence. We need not reach this issue because Petitioner did not request such an instruction, and "the trial judge ordinarily is not required to give a limiting instruction in the absence of a request." *Bruce v. State,* 318 Md. 706, 729, 569 A.2d 1254, 1266 (1990).

In sum, when a prior consistent statement is offered pursuant to Md. Rule 5–802.1(b) for the purpose of rebutting a charge of fabrication or improper influence or motive, the consistent statement is admissible only if it precedes the alleged fabrication, improper influence, or motive. Where such a prior consistent statement does not satisfy the requirements of Md. Rule 5–802.1(b), it cannot be admitted as sub-

**430**

stantive evidence. Neither *Tome*, FED.R.EVID. 801(d)(1)(B), nor Md. Rule 5–802.1(b), however, address the admissibility of prior consistent statements offered for other rehabilitative purposes. Prior consistent statements offered, as in the instant case, to explain an inconsistent statement may be admissible for rehabilitative purposes under Md. Rule 5–616(c)(2) where the fact that the prior consistent statement was made detracts from the impeachment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**